(No. 3058—

LEE ARNOLD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 12, 1940.*

JACOB BASKIN and LEONARD J. GROSSMAN, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

An opinion was filed in this cause on September 10th, 1940. Thereafter, upon petition of the respondent, rehearing was allowed. Upon rehearing the following opinion is substituted for the original opinion herein:

The claimant, Lee Arnold, filed his complaint in this court seeking an award in the sum of $10,000.00 for disabilities alleged to have been sustained as the result of injuries received while in the employ of the State of Illinois.

We find the facts to be that on February 18, 1936, the claimant, Lee Arnold, was in the employ of the State of Illinois as a truck driver for the Division of Highways, Department of Public Works and Buildings; that he was then married and had five children under sixteen years of age. It was stipulated that claimant's employment was seasonal, and that his earnings for the purpose of computing compensation amounted to $5.20 per day on the basis of 200 days employment per year. Claimant had worked for the State but nine days prior to February 18, 1936, and on that date he was operating a truck and snow plow, clearing the highway of snow. The nose of the plow struck an expansion plate on a bridge floor and the plow overturned. The claimant and his helper got out of the overturned truck, and claimant then attempted to cut the hose leading to the radiator in an effort to drain the radiator to prevent it from freezing, the temperature at that time being about 24 degrees below zero. While the claimant was endeavoring to cut this hose a barrel of tar, which the evidence showed weighed from 300 to 600 pounds, struck the claimant in the back in the lower part of the spine. Help was obtained and claimant was taken to a neighboring farm-house and Dr. Edgecomb of Ottawa was summoned. Claimant was then removed in an ambulance to a hospital at Ottawa, where he was confined for five weeks. Dr. Christian was called into the case and claimant was placed in a plaster cast. About two weeks later claimant was transferred to the care of Dr. H. B. Thomas, a noted physician and surgeon, and was taken and confined to St. Luke's Hospital in Chicago, where another plaster cast was applied. It appears from the evidence that claimant remained in this hospital for a week and was taken home. He made periodical trips to the hospital in Chicago at two week intervals until November 28, 1936, for the purpose of receiving treatments and care from Dr. Thomas.

The respondent furnished all the hospitalization and medical care received by the claimant prior to November 28, 1936, and the claimant was paid $499.60 compensation during the period between February 18th and November 28, 1936.

Claimant testified that since the latter date he purchased a heat lamp machine for $222.00, but there is nothing in the record to indicate that he was instructed to purchase such lamp by the respondent, nor that the purchase thereof was

necessary or was advised by any of his physicians; nor is there anything in the record to indicate that the price paid therefor was the fair and reasonable value thereof, or what it is fairly and reasonably worth at the present time. Claimant also testified that since November, 1936, he has visited his family physician on approximately ten occasions at a cost of $2.00 for each visit; also that since November 30, 1937, he earned approximately $20.00 or $25.00 over a period of three or four months acting as business agent for the Retailers Clerks' Union. The amount paid by claimant for medical services is offset by the amount earned by him as aforesaid, and the evidence in the record does not justify an award for the amount paid by claimant for the lamp in question.

The claimant testified on January 26, 1939, that his condition had not improved since the time he originally testified in November, 1937; that since the last mentioned date he had attempted to drive his father-in-law's truck on several different occasions, and had attempted to do other work. He testified that he could drive a truck for fifteen or twenty minutes and then the pain would become so severe that it would be necessary for him to quit.

The medical testimony is not in harmony. Eminent physicians have given conflicting opinions—one to the effect that since November 28, 1936, claimant has been cured; others of equal renown, experience and training deny this.

This court had Dr. Magnuson of the Passavant Hospital in Chicago examine the claimant and report direct to the court, and considering the testimony of the doctors and the testimony of the claimant, we find that claimant is now incapacitated from performing the duties of his previous employment; that he cannot do any work which involves stooping or lifting for any considerable length of time, without completely incapacitating himself. We find that there is a direct causal connection between the injury he received at the time the heavy barrel rolled upon him and his present condition. In the opinion of Dr. Paul B. Magnuson, claimant's condition is permanent, but he felt there was something that could be done to improve it, and possibly take him out of the permanent disability class; that is, permanent immobilization of the lumbo-sacral joint, by fusion or bone graft, or both, as may be indicated upon exposure of the bone and its joints. Dr. Magnuson is of the opinion that claimant is wholly inca-

pable of performing the work he was doing prior to the injury, but states that probably he could do desk work, checking goods in and out, or the like, where he would be on his feet part time and sitting down part of the time, without bearing any weight over a number of consecutive hours. Dr. Magnuson also found that the claimant had a constant spot of tenderness and pain, which was localized on successive examinations repeated twice on two successive days by Dr. Stinchfield, his associate, and himself; that this spot does not vary; and connected with this spot of tenderness the claimant gives signs and symptoms which check up with injury to the joints in the lumbo-sacral region; that he had paralysis following the injury, with incontinence of urine and feces; that in other words, he had an actual concussion of the cord at the point which involved the cauda equina at the point where he now complains of pain; that he has muscle spasm which limits the whole motion of the spine, and in repeatedly putting him through motions of the spine, including the confusion tests with him in various positions where he could not realize what the physician was actually doing with his back, the pain occurred on the application of pressure on these joints. The evidence shows that the claimant is still wearing a steel brace. Dr. Magnuson concluded that the claimant has a loose lumbo-sacral joint, in all probability due to rupture of the ligaments at the time of the injury; that it is only the bones that show in the X-ray, and rupture of the ligaments in this region is more serious than a fracture, provided the bone is not crushed, because ligaments do not heal as well as bone, and give longer disability and more permanent disability.

The claimant is now 32 years of age, weighs 145 pounds, and is five feet eleven and one-half inches tall. From the record it appears that he had always been engaged in manual labor, and that he only went through the eighth grade at school; and that he is now willing to submit to an operation.

As we understand it, Dr. Magnuson is of the opinion that after any operation there will still be a period of continued disability and pain, in which manual labor is impossible even though the operation were a success. This operation would call for a bone graft from Lee Arnold's thigh into his back, and after that claimant would be put in a plaster cast and a new brace would be necessary, as a brace is still needed, but

of a different type from the one originally prescribed by Dr. Thomas. The question of what the result of an operation suggested by Dr. Magnuson would be, is largely a matter of conjecture.

After considering all of the evidence in the case, we find that on February 18, 1936, claimant and respondent were operating under the provisions of the Workmen's Compensation Act; that on said date claimant sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given to said respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that claimant's annual earnings, computed in accordance with paragraph (e) of Section 10 of the Workmen's Compensation Act, were $1,040.00, and his average weekly wage was $20.00; that claimant at the time of the injury was 28 years of age and had five children under the age of 16 years, to wit: Gertrude Ann, 8; Mary Lou, 5; Eileen, 6; Jackie Lee, 2; and John Robert, 8 months; that all medical, surgical and hospital services were provided by the respondent.

We further find that as the result of such accident claimant has sustained a complete disability which renders him wholly and permanently incapable of work; that under the provisions of Section 8, paragraph (f) of the Compensation Act, as construed by our Supreme Court in the case of *Moweaqua Coal Co.* vs. *Ind. Com.*, 360 Ill. 194, and in the case of *Truax-Traer Coal Co.* vs. *Ind. Com.*, 362 Ill. 75, the claimant is entitled to the sum of Forty-one Hundred Sixty Dollars ($4,160.00), less the sum of Four Hundred Ninety-nine Dollars and Sixty Cents ($499.60) heretofore paid by respondent, to wit, the net amount of Thirty-six Hundred Sixty Dollars and Forty Cents ($3,660.40), for complete and permanent disability, payable in weekly installments of Fourteen Dollars ($14.00) per week, and thereafter a pension during life annually in the amount of Three Hundred Thirty-two Dollars and Eighty Cents ($332.80), payable monthly.

We further find that the sum of $499.60 has been paid to claimant as aforesaid; that Two Hundred Fifty-one (251) weeks' compensation, amounting to Thirty-five Hundred Fourteen Dollars ($3,514.00), has accrued to December 11, 1940, and that said sum, less $499.60 heretofore paid to the claimant as aforesaid, to wit, the sum of Three Thousand

Fourteen Dollars and Fourteen Cents ($3,014.14), is payable at this time; and the balance of Six Hundred Forty-six Dollars ($646.00), payable in forty-six (46) weekly installments of Fourteen Dollars ($14.00), and one final installment of Two Dollars ($2.00). After such final installment is paid claimant is entitled to an annual pension of Three Hundred Thirty-two Dollars and Eighty Cents ($332.80), payable in monthly installments of Twenty-seven Dollars and Seventy-three Cents ($27.73) during the term of his natural life.

Award is therefore entered in favor of the claimant, Lee Arnold, for the total sum of Thirty-six Hundred Sixty Dollars and Forty Cents ($3,660.40) and a pension for life, payable as follows:

a) The sum of $3,014.40 is payable forthwith, for compensation which has accrued from February 19, 1936, to December 11, 1940, less the sum of $499.60 heretofore paid to claimant as aforesaid.

b) The sum of $646.00 payable in 46 weekly installments of $14.00 per week, commencing December 18, 1940, and one final installment of $2.00.

After the last installment of such compensation has been paid as aforesaid, the claimant, Lee Arnold, shall be paid an annual pension for and during his natural life in the sum of $332.80, payable in monthly installments of $27.73, commencing one week after the payment of the aforementioned final installment of $2.00.

It is further ordered that if the said Lee Arnold hereafter returns to work, or is able to do so, and earns, or is able to earn, as much as before the injury, payments under this award shall cease; and if said Lee Arnold returns to work, or is able to do so, and earns, or is able to earn, part but not as much as before the injury, this award shall be modified so as to conform to an award under paragraph (d) of Section eight (8) of the Compensation Act.

It is further ordered that this court retain jurisdiction of this cause for the making of such other and further orders herein as may be in accordance with the provisions of the Workmen's Compensation Act of this State.

This award, being subject to the provisions of an Act entitled "An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof" (Illinois Revised Statutes,

1939, Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled ''An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly,'' approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided by the foregoing Acts.